UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

LAZARO CHAVARRIA, et al.,

               Plaintiffs,        ORDER

    - against -            10-CV-1930 (MDG)


NEW YORK AIRPORT SERVICE, LLC, et
al.,

               Defendants.

- - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

    Plaintiffs, current and former transportation "ticket agents" for defendants, bring this collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and class action under sections 190 and 650 et seq. of the New York State Labor Law ("NYS Labor Law") alleging that defendants failed to pay them overtime.  After consenting to having me hear all matters in this action pursuant to 28 U.S.C. § 636(c), the parties have moved for final certification of the provisionally certified class pursuant to Fed. R. Civ. P. 23(a) and (b) and final approval of the settlement of this class action pursuant to Fed. R. Civ. P. 23(e).

FACTUAL AND PROCEDURAL BACKGROUND

    On April 29, 2010, plaintiff Lazaro Chavarria commenced this action on behalf of himself and current and former ticket agents

(hereinafter "plaintiffs") who worked at John F. Kennedy and LaGuardia Airports selling tickets to airline passengers for bus transportation to Manhattan.  Plaintiffs allege that defendants failed to pay plaintiffs overtime for hours worked over 40 hours per week in violation of the FLSA and NYS Labor Law.  Plaintiffs initially sued the New York Airport Service, Jacob Marmurstein and Zev Marmurstein (collectively "New York Airport Service defendants").  Plaintiffs added defendants Contract Transportation Inc. and Janet West (collectively "Contract defendants") in an amended complaint filed on April 23, 2010.  In their answers, both sets of defendants asserted the defense that plaintiffs were subject to the "outside sales" persons exemption of the wage and/or hour provisions of applicable federal and state law.  See ct. docs. 24 (Answer to Amended Complaint and Counterclaim of Contract defendants ¶ 52), 25 (Answer to Amended Complaint by New York Airport Service defendants ¶ 48).  On November 5, 2010, Judge Weinstein denied the plaintiffs' motion to dismiss the counterclaims of the Contract defendants.  At a settlement conference held on February 8, 2011, the attorneys reached an agreement in principle to settle on a class wide basis for $150,000.  See Cafaro Aff. dated December 8, 2011 ("Cafaro Aff.") (ct. doc. 76) ¶ 9, Exh. 1.

The plaintiffs filed their motion for preliminary approval of the settlement on May 6, 2011.  At the hearing on the motion, the parties advised that different plaintiffs had filed another FLSA collective action against defendant Contract Transportation

-2-

raising similar claims.  See Clarke v. Contract Transportation, Inc., et al., Docket No. 2011-CV-0780 (MDG).  After negotiations among the parties in both cases, their counsel advised at the June 3, 2011 conference that the four Clarke plaintiffs had reached an agreement with the Contract defendants to settle their claims for $16,000, and that the settlement in the instant action would be reduced by $16,000.[1]  Accordingly, plaintiffs' counsel withdrew the motion to certify and for preliminary approval of the class settlement (ct. doc. 59).

Plaintiff filed a new motion for provisional certification of the class action and for preliminary approval of the class settlement on June 21, 2011 (ct. docs. 62, 63, 64).  At a hearing held on July 19, 2011 and in a Preliminary Approval Order, this Court: (1) conditionally certified the proposed class for settlement purposes; (2) granted preliminary approval of the settlement agreement; (3) appointed plaintiffs' counsel as class counsel; and (4) approved the proposed class notice of settlement of the litigation.  See ct. doc. 67.

At a conference held on August 30, 2011, the parties informed the Court that Contract Transportation had discovered additional employee records and had determined that 64 additional employees were within the definition of the class.  The newly discovered employees fell within three categories: 1) 29

---

[1]  On October 31, 2011, I granted the parties' joint motion to approve the Settlement Agreement in Clarke.  See Clarke v. Contract Transporation, Inc., et al., Docket No. 2011-CV-0780 (MDG) (ct. doc. 16).

employees did not work any overtime hours during the relevant time period; 2) 14 employees worked some overtime hours during the relevant time period; and 3) for the remaining 22 employees, defendants' records did not show that they worked any overtime hours. See Declaration of Janet West dated September 13, 2011 (ct. doc. 70-8). However, the extant records for the third category of employees showed that all worked for less than one year and all earned less than $2,000 during their employment. Id. ¶ 7. After conferring, the parties moved to modify the provisional class certification and the settlement (ct. docs. 70, 71). In their new settlement, the parties agreed to increase the settlement fund by $1,750 and to redefine the class to include the second category of newly discovered employees and to exclude the first and third categories. The parties further agreed that the NYS Labor Law claims would be tolled from the date the action was filed, April 12, 2010, to the date the class was amended, September 13, 2011, and the FLSA claims would be tolled from the date of the original agreement, February 8, 2011, to the amendment date, September 13, 2011.

On September 28, 2011, I granted the parties' request to modify the Preliminary Approval Order to reflect the proposed new definition of the class. I observed that: "[a]lthough the modified definition of the class is narrowed to include only employees for whom the defendants have records reflecting overtime hours, the original settlement effectively provided for payment only for those employees for whom there were records of

-4-

overtime." <u>See</u> Docket Entry dated Sept. 28, 2011. I thus concluded that the narrowed definition would "protect the rights of those employees who would have been included in the previous definition but would not have received payment." <u>Id.</u>

On December 8, 2011, the parties jointly filed their motion for final approval of the Class Settlement indicating that 38 percent of the proposed class members had filed a claim and that no one objected (ct. docs. 74, 75 and 76). At the fairness hearing held on December 19, 2011, I directed the Claims Administrator to make one further attempt to contact a claimant who had failed to sign his claim form and extended his time to submit a claim form to January 6, 2012.

On January 9, 2012, plaintiff's counsel filed a request on consent to extend the deadline <u>nunc pro tunc</u> for submission of claims to January 6, 2012 so as to include nine additional class members. <u>See</u> ct. doc. 77. Counsel indicated that after the fairness hearing, it was discovered that nine plaintiffs had opted into the FLSA collective action and filed consent forms with this Court but not the settlement claims administrator. <u>See</u> Supplemental Affirmation of William Cafaro in Support dated January 9, 2012 ("Cafaro Supp. Aff.") (ct. doc. 77) ¶ 1. Counsel explained that of the nine class members, all nine had executed the claim forms and sent them to the settlement claims administrator after the November 29, 2011 deadline originally set. <u>See</u> <u>id.</u> ¶ 4.

Under the proposed settlement, defendants agree to pay the plaintiff class $135,750.00.  From the gross settlement amount, plaintiff proposes that $11,698.27 be allocated to the settlement administrator, $5,000.00 to the named plaintiff and $45,250.00 to class plaintiffs' counsel.  Plaintiff and each class member would receive a _pro_ _rata_ share of the remaining settlement proceeds of $73,801.73 for overtime wages and liquidated damages owed as determined according to the formula set forth in the Settlement Agreement.  Essentially, the total number of hours, as well as the number of overtime hours each class member worked, would be based on the records of defendants.  In light of the claims received by the settlement administrator by January 9, 2012, counsel estimates that each _pro_ _rata_ share that the participating class member will be awarded would be at least 100% of the unpaid wages for overtime hours and 59% of all potential damages, including liquidated damages.

<u>DISCUSSION</u>

I.   <u>Final Certification of the Settlement Class</u>

The Court certifies the following class under Fed. R. Civ. P. 23(e), for settlement purposes:

> Named Plaintiff[s] and other current and former Ticket Agents working at New York's LaGuardia or John F. Kennedy airports while employed by the Defendants at any time during the period from April 29, 2004 through the present for whom the Defendants have employment records indicating that he or she worked overtime hours in such capacity, as defined as more than 40 hours per calendar week during such period.

This Court finds that Plaintiffs meet all of the requirements for class certification under Fed. R. Civ. P. 23(a) and (b)(3).

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(1) because there are more than 200 Class Members and therefore joinder is impracticable.  See Consol. Rail. Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members").

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(2), because Plaintiffs and the Class Members share common issues of fact and law, including whether Defendants failed to pay Plaintiffs and the Class Members for all of the overtime they worked.

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(3), typicality, because plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the class members' claims. See Prasker v. Asia Five Eight LLC, No. 08 Civ. 5811(MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010).  Plaintiffs held identical positions, worked under similar conditions and suffered the same injuries as a result of defendants' methods of calculating and paying wages.

Plaintiffs satisfy Fed. R. Civ. P. 23(a)(4), adequacy, because plaintiffs' interests are not antagonistic or at odds with the class members.  See Diaz v. Eastern Locating Servs., Inc., No. 10 Civ. 4082(JCF), 2010 WL 2945556, at *2 (S.D.N.Y. July 22, 2010); Prasker, 2010 WL 476009, at *2.

Plaintiffs also satisfy Rule 23(b)(3).  The common factual allegations that Defendants failed to pay Class Members for all overtime they worked and plaintiffs' common legal claims predominate over any factual or legal variations among class members.  See Diaz, 2010 WL 2945556, at *2; Prasker, 2010 WL 476009, at *2.  Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually.  See Diaz, 2010 WL 2945556, at *2.

II.   Approval of the Settlement Agreement

In evaluating a proposed settlement under Rule 23(e) of the Federal Rules of Civil Procedure, the Court must determine whether the settlement, taken as a whole, is fair, reasonable and adequate.  See Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995).  Settlements are strongly favored as a matter of policy, because "[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time."  Evans v. Jeff D., 475 U.S. 717, 761 n.15 (1986).  Thus, "[s]ettlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'"  In re Sumitomo Copper Litig., 189 F.R.D. 274, 280 (S.D.N.Y. 1999)

(citation omitted); accord Maley v. Del Global Tech. Corp., 186 F. Supp. 2d 358, 361 (S.D.N.Y. 2002).

In evaluating the fairness of a settlement, a court should examine (1) the negotiating process that led up to the settlement and (2) the substantive terms of the settlement. D'Amato v. Deutsche Bank, 236 F.3d 78, 85-86 (2d Cir. 2001) (citations omitted).

A court reviewing the procedural fairness of a settlement "must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery necessary to effective representation of the class's interests.'" D'Amato, 236 F.3d at 85 (quoting Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982)). A proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate if, as is the case here, it was the product of arm's length negotiations conducted by capable counsel, well experienced in class action litigation. See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 117 (2d Cir. 2005). In addition, "[i]n appraising the fairness of a proposed settlement, the view of experienced counsel favoring the settlement is 'entitled to [] great weight' . . . . [T]here is thus a strong initial presumption that the compromise as negotiated herein under the [c]ourt's supervision is fair and reasonable." In re Michael Milken and Assocs. Sec.

Litig., 150 F.R.D. 46, 54 (S.D.N.Y. 1993) (internal citation omitted).

The factors to be considered in evaluating a class action settlement include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974). In applying these factors, the Court may neither substitute its judgment for that of the parties who negotiated the settlement nor conduct a mini-trial of the merits of the action. See Weinberger, 698 F.2d at 74. "[T]he role of a court in passing upon the propriety of the settlement of a . . . class action is a delicate one . . . . [W]e recognize that since the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal for the trial." Newman v. Stein, 464 F.2d 689, 691-92 (2d Cir. 1972) (citation and internal quotations omitted). The Court must determine whether the

-10-

settlement is within a range that reasonable and experienced attorneys could accept considering all relevant risks, facts and circumstances.  See Weinberger, 698 F.2d at 74; Grinnell, 495 F.2d at 455.

     A.   Procedural Fairness

The parties reached this settlement after plaintiffs conducted a thorough investigation and evaluation of the claims, which included discovery spanning approximately five months and review of defendants' payroll data and time records dating back to 2004 which showed the number of hours worked by ticket agents. See Cafaro Aff. ¶ 6.  The parties also discussed and stipulated to the relevant tolling periods for both FLSA and New York Labor Law claims.  See id. ¶ 15.  Even after the parties reached the initial settlement, and after the intervention of the Clarke plaintiffs as well as the discovery of the unaccounted for ticket agents, the parties further negotiated the amended terms of the settlement to produce the final agreement.

Additionally, plaintiffs' current counsel, William Cafaro of the Law Offices of William Cafaro recommends that this Court approve the settlement.  Mr. Cafaro, an attorney with substantial experience litigating wage and hour claims and complex litigation, spent significant time and did substantial work identifying, investigating, and settling Plaintiff's and the Class Members' claims.  This Court observed counsel's performance in this action in status conferences and multiple settlement

conferences and finds that his performance in both litigating and settling this case demonstrates his commitment to the Class and to representing the Class' interests.

Based on the Court's supervision of the settlement process this Court finds that the settlement was a product of extensive arm's length negotiations by experienced counsel.  There is no hint of coercion or collusion that affected the process.  See In re Holocaust Victim Assets Litig., 105 F. Supp. 2d 139, 146 (E.D.N.Y. 2000 (citing In re Warner Communications Sec. Litig., 798 F.2d 35, 37 (2d Cir. 1986).  Because of all these circumstances, the presumption of procedural fairness applies here.  In re Wal-Mart Stores, 396 F.3d at 116.

B.   Substantive Fairness

The settlement is substantively fair.  All of the factors set forth in Grinnell weigh in favor of final approval.

1.   Complexity, Expense and Likely Duration of Litigation

Continuing this litigation would have resulted in delay and further expense.  A trial on damages and any post-judgment motions and appeals would have required further expenditure of both time and money.  Absent a settlement, the costs incurred by continuing this litigation would likely have outweighed any potential recovery.  In addition, the delay inherent in further litigation would reduce the value of any potential recovery.  See Maley, 186 F. Supp. 2d at 361-62.  On the other hand, the settlement provides certain compensation to the class members now

-12-

rather than awaiting an eventual resolution that would result in further expense without any definite benefit.

        2.   <u>Reaction of the Class</u>

"It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." <u>Maley</u>, 186 F. Supp. 2d at 362-63. As discussed below, <u>infra</u>, the notices regarding the settlement sent to the 221 Class Members included an explanation of the allocation formula for the calculation of each class member's award.  The Notice also informed class members of their right to object or to exclude themselves from the settlement, and explained how to do so.  91 class members opted in and the only putative class members who requested exclusion are the four <u>Clarke</u> plaintiffs who settled on similar terms through separate counsel.  No class member objected to the settlement.  <u>See</u> Cafaro Aff.  ¶ 20, Exhibit 10 (Declaration of Krista Tittle of Simpluris, Inc., Claims Administrator ("Tittle Decl.") ¶¶ 10-15); Cafaro Supp. Aff. ¶¶ 1-4.  This factor weighs in favor of approval of the settlement.  <u>See</u> <u>Prasker</u>, 2010 WL 476009, at *4 (granting final approval where no class members objected and only 2 class members opted out).

        3.   <u>The Stage of the Proceedings and Amount of</u>
            <u>Discovery Completed</u>

The stage of the proceedings and the amount of discovery completed are evaluated to ensure that the parties "have a clear view of the strengths and weaknesses of their cases."  <u>In re</u>

<u>Warner Comm. Sec. Litig.</u>, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), <u>aff'd</u>, 798 F.2d 35 (2d Cir. 1986).  This litigation settled after approximately five months of discovery.  The discovery process involved the review of payroll records provided by Contract defendants dating back to 2004, which showed the number of hours worked by ticket agents.  <u>See</u> Cafaro Aff. ¶ 6.  Legal questions arose during discovery, particularly after defendants produced a June 2011 determination by the United States Department of Labor ("DOL") that the ticket agents at issue were exempt from FLSA as "outside sales" employees.  <u>See</u> <u>id.</u> ¶¶ 6, 7.  Although the plaintiff attempted to dismiss this defense of the Contract defendants' counterclaim, the motion was denied by the Court. Under the circumstances, counsel had sufficient information to make a meaningful evaluation of the merits of plaintiffs' claims, the strengths of the defenses asserted by defendants and damages. <u>See</u> <u>Maley</u>, 186 F. Supp. 2d at 364.  Since the parties engaged in extensive discovery and motion practice, this factor weighs in favor of approving the settlement.

> 4.   <u>Risks Involved in Establishing Liability and Damages and in Maintaining the Class Action Through Trial</u>

The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." <u>deMunecas v. Bold Food, LLC</u>, No. 09 Civ. 0440 (DAB), 2010 WL 3322580, at *1 (S.D.N.Y. Aug. 23, 2010).  One purpose of a settlement is to avoid the uncertainty of a trial on the merits. <u>Id.</u>

As discussed above, defendants raised the defense that the DOL ruled in a June 21, 2011 determination that the ticket agents were exempt from the FLSA as "outside sales" employees under 29 C.F.R. § 541.502.  While this ruling is not binding on the Court, the fact that such a determination was made reflects the risk plaintiff faced in establishing liability.  Even if plaintiff prevailed on his argument, the DOL determination could undermine plaintiff's claim for liquidated damages.  See Cafaro Aff. ¶ 8.

The risk of maintaining class status throughout trial also weighs in favor of final approval.  A contested class certification motion would likely require extensive discovery and briefing.  If the Court granted a contested class certification motion, defendants could have sought leave to appeal under Rule 23(f) and/or moved to decertify, which would have required additional rounds of briefing.  Settlement eliminates the risk, expense and delay inherent in this process.  See Campos v. Goode, 10 Civ. 0224(DF), 2011 U.S. Dist. LEXIS 22959, at *14 (S.D.N.Y. Mar. 4, 2011).  Thus, this Grinnell factor weighs in favor of final approval.

### 5.  Collectibility and Defendants' Ability to Withstand a Greater Judgment

It is not certain that defendants could withstand a greater judgment.  At the time that settlement negotiations were initiated, defendants were terminating their business operations after having lost their contract to operate at the airports.  See Cafaro Aff. ¶ 8.  The risk that defendants would not be able to

satisfy a larger judgment was a significant factor in plaintiffs' decision to settle their claims.  See Maley, 186 F. Supp. 2d at 365 (considering defendant's "dire financial condition" and recognizing that "obtaining a greater recovery than provided by the settlement would have been difficult").  The Settlement Agreement eliminates the risk of collection from defendants who may not be operating after a lengthy litigation.

      6.   <u>The Range of Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and All Risks of Litigation</u>

The determination of a reasonable settlement "'is not susceptible of a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within 'a range of reasonableness.'"  In re PaineWebber Ltd. P'ship Litig., 171 F.R.D. 104, 130 (S.D.N.Y. 1993) (quoting Milken, 150 F.R.D. at 66).  As the Second Circuit has stated, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  Grinnell, 495 F.2d at 455.  "In fact, there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  Id. at 455 n.2.

Even assuming that plaintiffs could have obtained a judgment for substantial damages, the victory may have been illusory since it was questionable whether defendants would be able to satisfy a larger judgment, as discussed.  Notably, under the settlement

-16-

agreement, each plaintiff would receive 100% of any unpaid
overtime wages due and approximately 59% of the total aggregate
damages, which includes the award of liquidated damages.  See
Cafaro Aff. ¶ 21; Cafaro Supp. Aff. ¶ 5 fn.2.  This recovery for
each class member is well within the range of reasonableness
given the risks and delay of continued litigation measured
against the value of obtaining certain compensation more quickly.
See In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1396,
1405 (E.D.N.Y. 1985) ("much of the value of a settlement lies in
the ability to make funds available promptly").

       7.   The Plan of Allocation

     "To warrant approval, the plan of allocation must also meet
the standards by which the settlement was scrutinized - namely,
it must be fair and adequate."  Maley, 186 F. Supp. 2d at 367
(internal citation and quotations omitted).  "An allocation
formula need only have a reasonable, rational basis, particularly
if recommended by experienced and competent class counsel."  Id.
In determining whether a plan of allocation is fair, courts look
primarily to the opinion of counsel.  See PaineWebber, 171 F.R.D.
at 133.  That is, "[a]s a general rule, the adequacy of an
allocation plan turns on whether counsel has properly apprised
itself of the merits of all claims, and whether the proposed
apportionment is fair and reasonable in light of that
information."  Id.

     Courts also consider the reaction of the class to a plan of
allocation.  See Maley, 186 F. Supp. 2d at 367; PaineWebber, 171

F.R.D. at 126.   The notices, which this Court reviewed and
approved, were sent to 221 class members for whom plaintiffs'
counsel and the Claims Administrator were able to obtain
addresses.   See Cafaro Aff. ¶¶ 8, 14, 20; Tittle Decl. ¶¶ 5-11;
Cafaro Supp. Aff., ¶¶ 2-4.   The Notice provided the class members
with an explanation of how their award would be calculated
according to the plan of allocation.   See generally Cafaro Aff.,
Exhs. 3, 4, 7, 9; Tittle Decl. ¶¶ 5-11 and accompanying exhibits.
No objections to the settlement have been received.   See Cafaro
Aff. ¶ 20; Tittle Decl. ¶ 15.

        The Settlement Agreement provides that the participating
class members shall receive a pro rata share of the Settlement
Fund calculated as follows:

>           (1) divide the amount allegedly due and owing
>           for back overtime under NYLL and FLSA (plus
>           25% liquidated damages on all hours accrued
>           between April 29, 2004 and April 29, 2007,
>           and 100% liquidated damages on all hours
>           accrued between April 30, 2007 and April 29,
>           2010) to that individual by the total sum
>           allegedly due and owing to all known Class
>           Members; (2) convert that number to a
>           percentage; and then (3) multiply that
>           percentage by the Net Settlement Fund.   For
>           the purposes of this calculation, liquidated
>           damages are calculated based on the time
>           period in which the wages were allegedly
>           earned and unpaid: for wages earned from
>           April 29, 2007 and after, liquidated damages
>           will be an amount equal (100%) to those
>           wages, representing liquidated damages
>           available under FLSA; for wages earned
>           between April 29, 2004 and April 29, 2007,
>           liquidated damages will be twenty-five (25%)
>           of those wages, representing liquidated
>           damages available under the NYLL.   If wage
>           data cannot be obtained for precisely before
>           and after April 28, 2007, quarterly or weekly

> payroll records will be prorated to reach an
> approximation.

Cafaro Aff. ¶¶ 17-19, Exhs. 2 (Amended Settlement Agreement and Release ¶ 3.4(D)), 11 (Addendum to Amended Settlement Agreement and Release ¶ 1.18).  Since this formula is based on records of hours worked, this Court finds the allocation is reasonable.

III. Approval of FLSA Settlement

The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. See Khait v. Whirlpool Corp., No. 06-6381 (ALC), 2010 WL 2025106 at *6 (E.D.N.Y. Jan. 20, 2010) (citing McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984)).

The majority of federal courts have required parties settling claims under the FLSA to obtain court approval or supervision by the Department of Labor.  See, e.g., Mateo v. Greenwich Village Entertainment Group LLC, No. 10 Civ. 2465 (DLC), 2011 WL 321146 (S.D.N.Y. Feb. 1, 2011);  Dees v. Hydradry, Inc., No. 8:09-cv-1404-T-23TBM, 2010 WL 1539813 (M.D. Fla. Apr. 19, 2010); Le v. SITA Information Networking Computing USA, Inc., No. 07-cv-86 (JS)(MLO), 2008 WL 724155 (E.D.N.Y. Mar. 13, 2008). Since the parties have filed this motion, this Court will review the fairness of the settlement despite doubts whether the formal motion filed herein for court approval is necessary.  See Clarke, 11-cv-780, ct. doc. 16 at 2-6.

Courts generally approve FLSA settlements when they are reached as a result of contested litigation to resolve <u>bona</u> <u>fide</u> disputes.  <u>Khait</u>, 2010 WL 2025106 at *7 (citing <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).  As discussed above, <u>supra</u>, the settlement was the result of "extensive negotiations which were highly spirited" and conducted at arm's length.  <u>See</u> Cafaro Aff. ¶ 9.  Clearly, the settlement of the FLSA claims meets the legal standards for approval.

IV.  <u>Dissemination of the Notice</u>

Notices of the settlement, including the amendment of the settlement were timely sent by first-class mail to each class member at his or her last known address (with re-mailing of return notices).  <u>See</u> <u>id.</u> ¶ 11.  Beside the notice sent after issuance of the Preliminary Approval Order, the plaintiffs sent notices of the amended settlement to all class members newly discovered and other newly discovered employees, some of who were not included in the class.  <u>See</u> Cafaro Aff. ¶¶ 12-14.  In addition, the two employees who received the original notice after preliminary approval and were later not included in the redefined class received specialized notices advising them of the change to the settlement and explaining their rights.  <u>See</u> Cafaro Aff. ¶ 14.  To ensure that all Class Members were on "equal footing[,]" the deadline for filing claim forms was extended an

additional 60 days and the Fairness Hearing was postponed until
after the filing of those documents.  See Cafaro Aff. ¶ 14.

Having reviewed the two notices to prospective class
members, both before mailing and in conjunction with the instant
motion, this Court finds that the Notices fairly and adequately
advised class members of the terms of the settlement, as well as
the right of members of the class to opt out of the class, to
object to the settlement and to appear at the fairness hearing
conducted on December 19, 2011.  Class Members were provided the
best notice practicable under the circumstances.  The Court
further finds that the Notice and distribution of such Notice
comported with all constitutional requirements, including due
process.

Finally, the Court confirms Simpluris, Inc. as the Claims
Administrator.

V.    Service Award to Plaintiff

The Court finds reasonable the service award of $5,000.00
proposed for Lazaro Chavarria, the Class Representative.  This
amount shall be paid from the Gross Settlement Fund.

Such awards are common in class action cases and are
important to compensate plaintiff for the time and effort
expended in assisting the prosecution of the litigation, the
risks incurred by becoming and continuing as a litigant and any
other burdens sustained by the plaintiff.  See Parker v. Jekyll &
Hyde Entm't Holdings, LLC, No. 08 Civ. 7670 (BSJ)(JCF), 2010 WL

532960, at *1 (S.D.N.Y. Feb. 9, 2010); McMahon v. Oliver Cheng
Catering and Events, LLC, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist.
LEXIS 18913, 2010 WL 2399328, at *8-9 (S.D.N.Y. Mar. 3, 2010);
Khait, 2010 WL 2025106, at *9; see also Roberts v. Texaco, Inc.,
979 F. Supp. 185, 200-01 (S.D.N.Y. 1997).

       According to plaintiffs' counsel, Mr. Chavarria aided
counsel in the fact-finding process and was instrumental in
locating and contacting Class Members.  Mr. Chavarria also
attended meetings between counsel and various other ticket
agents, both at counsel's office and elsewhere.  See Cafaro Aff.
¶ 25.


VI.  Attorneys' Fees
       Attorneys who create a common fund from which members of a
class are compensated are entitled to "a reasonable fee--set by
the court--to be taken from the fund." Goldberger v. Integrated
Resources, Inc., 209 F.3d 43, 47 (2d Cir. 2000) (internal
citation omitted).  "What constitutes a reasonable fee is
properly committed to the sound discretion of the district
court[.]" Id. at 47.  Fees may be awarded under either the
lodestar or percentage of the funds methods, but in this Circuit,
the percentage method is the "trend." McDaniel v. County of
Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); Wal-Mart Stores,
396 F.3d at 121.  This is because:

       [T]he percentage method directly aligns the interests
       of the class and its counsel and provides a powerful
       incentive for the efficient prosecution and early
       resolution of litigation . . . .  [It] is also the most

-22-

> efficient means of rewarding the work of class action
> attorneys, and avoids the wasteful and burdensome
> process - to both counsel and the courts - of preparing
> and evaluating fee petitions . . . .

In re Lloyd's American Trust Litig., No 96 Civ. 1262 RWS, 2002 WL
31663577, at *25 (S.D.N.Y. Nov. 26, 2002).  In addition, the
percentage method is intended to mirror the private marketplace
where contingent fee attorneys typically negotiate percentage fee
arrangements with their clients.  See In re Am. Bank Note
Holographics, Inc., 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001).

However, in wage and hour class action lawsuits, public
policy favors a common fund attorneys' fee award.  See Frank v.
Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Fee
awards in wage and hour cases are meant to "'encourage members of
the bar to provide legal services to those whose wage claims
might otherwise be too small to justify the retention of able,
legal counsel.'"  deMunecas, 2010 WL 3322580, at *8 (quoting Sand
v. Greenberg, No. 08 Civ. 7840 (PAC), 2010 WL 69359, at *3
(S.D.N.Y. Jan. 7, 2010)).  Adequately compensating attorneys who
protect wage and hour rights will serve the remedial purposes of
the FLSA and NYS Labor Law.  See McMahon, 2010 WL 2399328, at *7;
Khait, 2010 WL 2025106, at *8.  "If not, wage and hour abuses
would go without remedy because attorneys would be unwilling to
take on the risk." Campos, 2011 U.S. Dist. LEXIS 22959, at *19
(citing deMunecas, 2010 WL 3322580, at *8).

Regardless of which method is utilized, courts in this
Circuit must consider the following factors in determining what

constitutes a reasonable fee: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  See Goldberger, 209 F.3d at 50.

Here, Class Counsel risked time and effort and advanced costs and expenses with no ultimate guarantee of compensation, and is therefore entitled to attorneys' fees.  Although this case is not as complex as a large scale national class action, plaintiffs' claims involved a serious question of whether the work performed was protected under the applicable labor laws as well as the tedious determination of the number of hours that they worked.  Moreover, plaintiffs faced a high risk of non-recovery given the imminent closing of defendants' operation.

Additionally, I find that counsel was well qualified to conduct this litigation.  Counsel appeared before me over ten times and I had the opportunity to observe that he had a good grasp of the facts and the legal issues in this case and capably handled settlement discussions and settlement administration issues.  Although he did not have prior experience litigating class actions, he had experience handling labor law cases and complex commercial litigation.

Plaintiffs request attorneys' fees in the amount of $45,250.00 or 1/3 of the amount of the settlement, including the cost of administering the settlement up to the time plaintiffs

-24-

filed the instant motion.  See Cafaro Aff. ¶¶ 22-24.  Plaintiffs' counsel's billing records show 155.1 hours of work that Mr. Cafaro performed at a rate of $350 per hour for a total of $54,285 fees claimed, not including the hours expended by an associate and administrative staff.  Counsel conducted pre-filing investigation and interviews, researched and drafted the complaint and amended complaint, prepared and argued a motion to dismiss, and engaged in discovery and settlement negotiations. See generally Cafaro Aff. ¶¶ 22-24, Exh. 13 (billing records).  I find the number of hours claimed to be generally reasonable and counsel's rate of $350 reasonable for an attorney of his experience in commercial litigation.  The fact that the fee sought by Class Counsel does not include compensation for time and effort they will be required to spend administering the settlement going forward also supports their fee request.  See deMunecas, 2010 WL 3322580, at *10.

Applying the lodestar method as a "cross-check," see Goldberger, 209 F.3d at 50, the award counsel seeks is almost $10,000.00 less than the amount he could have charged a client for his billable hours alone.  Thus, no multiplier is sought.  In addition, counsel is waiving any claim for expenses incurred.

Thus, I find Class counsel's requested fee, 33% of the settlement, reasonable under the circumstances of this case and "well within the range accepted by courts in this Circuit."  See, e.g., deMunecas, 2010 WL 3322580, at *9 (33%);  Maley, 186 F. Supp. 2d at 369 (33 1/3%);  Klein v. PDG Remediation, Inc., No. 95

-25-

CV 4954 (DAB), 1999 WL 38179, at *4 (S.D.N.Y. Jan. 28, 1999)

(33%).  Given the relatively small settlement amount, the

percentage requested is necessary to adequately compensate

counsel.

<u>CONCLUSION</u>

For the foregoing reasons, the settlement is approved.

**SO ORDERED.**

Dated:     Brooklyn, New York
           June 25, 2012

                                    /s/
                                    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                                    MARILYN DOLAN GO
                                    UNITED STATES MAGISTRATE JUDGE